The relief described hereinbelow is SO ORDERED.

Signed April 13, 2007.



_____
ROBERT D. BERGER
United States Bankruptcy Judge

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

In re:

DIXIE KATHERINE ANDERSON,                      Case No. 06-20664
                    Debtor.                                     Chapter 13

**MEMORANDUM OPINION AND ORDER
DENYING TRUSTEE'S OBJECTION TO CONFIRMATION**[1]

The Chapter 13 Trustee objects to Debtor's plan as not proposed in good faith under 11 U.S.C. § 1325(a)(3).[2] The Trustee alleges the Debtor's proposed three-year plan is too short when her current monthly income[3] indicated she was above median income. The Court denies the Trustee's objection because the Debtor's pleadings now indicate she is below median income and must propose a three-year plan under § 1325(b)(4)(A).

---

[1] Debtor Dixie Katherine Anderson is represented by Maurice B. Stoltz. The Chapter 13 Trustee, William H. Griffin, appears in person and by Dianna Lord.
[2] Doc. No. 23.
[3] *See* 11 U.S.C. § 101(10A).

07.04.13 Anderson Order.wpd

## *Background*

The parties stipulate to the facts.[4] Debtor filed her bankruptcy petition, schedules, Form B22C,[5] and proposed plan on May 17, 2006. Debtor's initial Form B22C indicated annualized current monthly income of $48,136.56 with a household size of two. Debtor filed as a below-median debtor.[6] Debtor's net monthly disposable income according to Schedules I and J equaled $300. Debtor proposed to make plan payments of $300 for 36 months.

On June 26, 2006, the Debtor filed amended Schedules I and J, indicating the addition of a five-year-old grandchild as a dependent. Amended Schedule I also included an annual bonus received within six months of the petition date, thereby increasing Debtor's annualized current monthly income to $57,136.56. The Debtor did not file an amended Form B22C; however, with the inclusion of the bonus, Debtor would have been above median income even with an increased household size of three.

The Trustee objected on July 5, 2006, stating the disclosed bonus placed Debtor above median income, the Debtor should propose a five-year plan, and Debtor's plan was not proposed in good faith as required by 11 U.S.C. § 1325(a)(3). Also, on July 5, 2006, the Debtor filed second amended Schedules I and J and an amended Form B22C. These amendments indicated the household had grown to six with the addition of Debtor's 24-year-old daughter and two more grandchildren. The amended Form B22C reflected the increased income from the bonus and the increased household size.[7] Under the amended Form B22C, Debtor remained below median

---

[4] October 5, 2006, pre-trial conference.
[5] Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income.
[6] The Kansas median family income for two was $50,258.00 on the petition date.
[7] The household size was stated as four on Form B22C, but Schedule I showed six.
- 2 -

07.04.13 Anderson Order.wpd

income. On September 28, 2006, Debtor filed her third amended Schedules I and J and second amended Form B22C. The amended Form B22C corrected the household size to six.

The net effect of these amendments is the Debtor reported higher current monthly income but with more dependents and she fell below median income on Form B22C. Schedules I and J reflected anticipated future income and expenses would produce $300 in monthly disposable income to apply toward the plan. Because the Debtor always believed she was below median income, she never completed the means test on Form B22C.

The Trustee objects because if the Debtor had included her bonus on the first Form B22C when her household size was reported as two, she would be an above-median debtor committed to a five-year plan.[8] The Trustee frames the issue as whether the means test under 11 U.S.C. § 1325(b) is a snapshot on the petition date or subject to modification post-petition. The Debtor contends she is entitled to amend Form B22C as a matter of course to present a true picture of her circumstance.

*Discussion*

The issue is not whether the Debtor can amend her schedules to show the increased household size. She can.[9] The issue is as of what date the Applicable Commitment Period for the Debtor's Chapter 13 plan is determined and the extent to which the Debtor's post-petition and pre-confirmation change of household size affects the calculation of the Applicable Commitment Period. The calculation is irrelevant if the Debtor's plan provides for payment in full of all allowed unsecured claims in less than three or five years, which is not the situation in

---

[8] Section 1325(b)(4)(A) generally establishes the "Applicable Commitment Period" for a plan as either three or five years.

[9] Fed. R. Bankr. P. 1009(a) provides a right to amend a "petition, list, schedule, or statement" as a matter of course at any time before the case is closed, provided the debtor notifies the trustee and any affected parties.

- 3 -

07.04.13 Anderson Order.wpd

this case.[10]  Section 1325(b)(4) establishes the Applicable Commitment Period.  If the trustee or an unsecured creditor objects, the debtor is committed to either a three- or five-year period, depending on whether the debtor is above or below median income as determined under Form B22C.[11]

A debtor is determined to be above or below median by comparing the debtor's current monthly income with the Kansas median family income for a household of the same size.  Under BAPCPA, current monthly income cannot be amended during the case because it is based on concrete, historical data.[12]  No such restriction exists in the Code regarding household size. Median family income is defined as the median family income both calculated and reported by the Bureau of Census.[13]  Which median family income to apply to the debtor is determined by the debtor's household size -- 1 person, 2, 3, or 4 individuals, or exceeding 4 individuals.[14]  The Code does not say the debtor's historical household size as it existed when the debtor received the reported current monthly income should also be reported on Form B22C.  In fact, § 1325(b)(1) provides the only guidepost for when the Applicable Commitment Period is determined.  Section 1325(b)(1)(B) states:

> If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, *as of the effective date of the plan* –

---

[10]  11 U.S.C. § 1325(b)(4)(B).

[11]  11 U.S.C. § 1325(b)(1) and (4).

[12]  Current monthly income is defined as "the average monthly income from all sources that the debtor receives . . . derived during the 6-month period ending on the last day of the calendar month immediately preceding the date of the commencement of the case," excluding certain income not relevant here.  11 U.S.C. § 101(10A).

[13]  11 U.S.C. § 101(39A).

[14]  These benchmarks are used consistently throughout BAPCPA.  *See*, *e.g.,* 11 U.S.C. § 1322(d); § 1325(b)(3) and (4).

> [T]he plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan. (Emphasis added).

"As of the effective date of the plan" determines when the Applicable Commitment Period is set. This Court construes the "effective date of the plan" as the date on which the debtor's proposed plan is confirmed.[15] Thus, the debtor's household size on the date the plan is confirmed is the pertinent benchmark.

Although the Applicable Commitment Period is set at plan confirmation, the period starts to run "on the date that the first payment is due under the plan."[16] Section 1326(a)(1) states that unless the court orders otherwise, payments under the plan shall commence not later than 30 days after the order for relief or the plan is filed, whichever is earlier. Section 1326(a)(1) does not establish the length of the Applicable Commitment Period, but it does establish when the Applicable Commitment Period begins to run under the express language found in § 1325(b)(1)(B).

The Bankruptcy Rules allow a great deal of flexibility to amend and modify schedules.[17] Amendments are to be liberally allowed.[18] Debtors are required to amend to present a true picture of their circumstances. Upon objection, whether to allow the amendment turns upon a showing of bad faith.[19] Likewise, the Trustee's objection based upon 11 U.S.C. § 1325(a)(3)

---

[15] 11 U.S.C. § 1327; *In re Hutchinson,* 354 B.R. 523, 532 n.27 (Bankr. D. Kan. 2006) (The date the confirmation order is entered is the effective date of the plan.). Further, the Code says household size will determine how the debtor will calculate her future expenses under § 1325(b)(3). Section 1325(b)(3) states that "[a]mounts reasonably necessary" as expenses shall be determined under § 707(b)(2)(A) and (B) if the debtor is an above-median income debtor.

[16] 11 U.S.C. § 1325(b)(1)(B).

[17] Fed. R. Bankr. P. 1009(a).

[18] *In re Arnold,* 252 B.R. 778, 784 (B.A.P. 9th Cir. 2000).

[19] *In re Lewis*, 273 B.R. 739, 747 (Bankr. N.D. Ga. 2001).

turns on a showing of bad faith on the part of the Debtor. However, whether a debtor is committing sufficient income to a Chapter 13 plan is determined by § 1325(b), not § 1325(a)(3). Thus, the Court does not consider the debtor's ability to pay in determining good faith because Congress specifically dealt with the debtor's plan payments in § 1325(b).[20]

In this case, the Debtor's plan is evaluated for compliance with § 1325 as of confirmation. At present, Debtor's Applicable Commitment Period is statutorily set at three years. The Trustee makes no allegations that Debtor has attempted to manipulate the bankruptcy process or has otherwise tried to mislead the Trustee or this Court as to her true circumstances. The Debtor and Trustee stipulated that the Debtor's household size did, in fact, increase from two to six people within two months after the petition date, but prior to confirmation. The Trustee's objection is
based solely on Debtor's circumstances as they existed on the petition date. The Trustee has failed to support an objection based upon the Debtor's bad faith.

Even in the face of § 1325(b), Chapter 13 trustees are not compelled to object to confirmation of a plan when it reflects the best efforts of the debtors. Section 1325(b) is only triggered upon objection to confirmation of the debtor's plan, and what logic drives denial of confirmation of a plan that represents the debtor's best efforts? It is the debtors, and not the creditors, who make payment commitments under the plan.

### *Conclusion*

For the foregoing reasons, the Court concludes the Debtor's plan complies with § 1325(a)(3) and § 1325(b)(4) and may be confirmed as a three-year plan. The Court overrules

---

[20] *In re Barr*, 341 B.R. 181, 184 (Bankr. M.D.N.C. 2006) (amount to be paid to unsecured creditors is not considered under good faith standard).

- 6 -

07.04.13 Anderson Order.wpd

Case 06-20664   Doc# 33   Filed 04/13/07   Page 6 of 7

the Trustee's Objection to Confirmation. The plan is still subject to the Objection to Confirmation of Plan filed by Creditor Capital One Auto Finance Department.[21] The Debtor is hereby ordered to notice the plan for hearing on Capital One Auto Finance Department's objection.

    IT IS SO ORDERED.

###

ROBERT D. BERGER
U.S. BANKRUPTCY JUDGE
DISTRICT OF KANSAS

---

[21] Doc. No. 22.